UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MYFANWY C. SCHULLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 3:10-CV-266 CAN |
| | ) |
| MICHAEL J. ASTRUE | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

On October 28, 2010, Plaintiff, Myfanwy Schuller ("Schuller"), filed her complaint asking this Court to reverse and remand the administrative law judge's ("ALJ") decision of February 17, 2009. On December 7, 2010, Defendant, Michael J. Astrue, Commissioner of Social Security filed his response. Schuller never filed a reply. This Court now enters its ruling based upon the consent of the parties and 28 U.S.C. § 636(c).

**I.    PROCEDURE**

On June 14, 2006, Schuller filed an application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits alleging a disability beginning on January 1, 2003. This claim was initially denied on September 11, 2006, and again upon reconsideration on December 12, 2006. On November 17, 2008, Schuller testified at a hearing before an ALJ. On February 17, 2009, the ALJ issued his decision denying Schuller's application for DIB and SSI benefits. The Appeals Council denied review of the ALJ's opinion, making the ALJ's decision the final determination of the Commissioner. Schuller then filed her complaint in this Court pursuant to 42 U.S.C. § 405(g).

**II.    ANALYSIS**

A.   Facts

Schuller was born in June 19, 1964 and was 38 years old at the alleged onset of disability. She graduated from high school and attended a few college classes, but never graduated. Over the last fifteen years Schuller has worked as a medical transcriptionist/secretary, human resources assistant, and nursery office manager. Schuller suffers from fibromyalgia, depression, and severe back pain which she alleges prevents her from working. Schuller alleged onset of total disability in early 2003.

1.   Medical Evidence

Schuller began treatment with Dr. Nicholas Straniero in July 2004 complaining of lower back pain. Dr. Straniero conducted an examination, finding Schuller's range of motion to be normal, but found tender points in her upper and lower back, chest, shoulders, neck, and knees. He reviewed x-rays which showed disc degeneration at L4 and L5 with spondylolisthesis[1] of L4 on L5. Dr. Straniero diagnosed Schuller with fibromyalgia[2] and degeneration in her spine. Dr. Straniero also noted significant weight gain that aggravated Schuller's low back pain. He recommended physical therapy, additional diagnostic testing, and medication.

On November 8, 2004, Schuller returned to Dr. Straniero. Schuller reported relief from her muscular pain due to the medication and improved sleep. Based on Schuller's complaints of lower back pain and new x-rays showing changes in her spine, Dr. Straniero recommended that

---

[1] Defined as anterior displacement of a vertebra on the adjacent lower vertebra. Orthopaedic Dictionary, Stanley Hoppenfeld, M.D. and Michael Zeide, M.D. J.B. Lippincott Company, 1994, p. 369.

[2] A disease classified in the arthritis and rheumatism category with primary symptoms including "pain all over," disturbed sleep, stiffness, fatigue, and multiple tender spots. Upon testing, a patient needs to have at least 11 out of 18 known tender spots to be diagnosed with fibromyalgia. See Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996).

an MRI be done and referred Schuller to Dr. Henry DeLeeuw.

On December 13, 2004, Schuller saw Dr. DeLeeuw. Dr. DeLeeuw reviewed the MRI results and noted spondylolisthesis of L4-L5 with spinal stenosis[3] and a synovial cyst. He recommended decompression and fusion. In February 2005, Dr. DeLeeuw performed a laminectomy and a L4-5 fusion. At a follow-up appointment on March 14, 2005, treatment notes reflect that Schuller was doing fine. In May 2005, Schuller complained to Dr. DeLeeuw of ongoing back pain and continued weight-gain. Dr. DeLeeuw advised Schuller to get into shape and recommended physical therapy.

On July 21, 2005, Schuller returned to Dr. Straniero and reported that her medication was helping "immensely" with her pain and her depressive symptoms. Dr. Straniero recommended that Schuller see a pain management specialist. On August 22, 2005, Schuller saw Dr. Ajit Pai, a pain management specialist, complaining of lower back pain and difficulty in walking and performing work activities. Dr. Pai gave Schuller a caudal epidural injection during this visit. At a follow up visit on October 17, 2005, Dr. Pai noted that Schuller reported significant relief from the injection and sat without too many problems.

On November 18, 2005, Schuller met with the nurse practitioner at Dr. Pai's office to discuss further pain management techniques and ways to improve her quality of sleep. Schuller was provided a book detailing back exercises to help alleviate her pain. Schuller returned on December 15, 2005, seeking to refill her prescriptions as they were helping with her pain. At

---

[3] Spinal stenosis is the narrowing of one of more areas of the spine, typically occurs in the neck or lower back. This is commonly caused by age-related changes. The narrowing puts pressure on the spinal cord or nerves at the point of compression. Mayo Clinic, Spinal Stenosis: Definition, available at http://www.mayoclinic.com/health/spinal-stenosis/DS00515, last accessed on April 11, 2011.

this visit she reported a difficulty in paying for her medications due to a change in her husband's benefits. The nurse practitioner recommended that Schuller see Dr. Schumacher for her pain control due to her difficulties with healthcare. On January 20, 2006, Schuller visited with Dr. Pai's nurse practitioner and reported that the medications were still controlling her pain very well. Schuller reported that she was recovering from strep throat and sought a refill of her antibiotic medication as she lost her prior prescription. The nurse practitioner's notes were copied to Dr. Schumacher, suggesting that Schuller did consult with him although no treatment notes have been provided by Schuller.

On February 15, 2006, Schuller met with Dr. David Miller, another pain specialist. Dr. Miller reviewed Dr. Pai's treatment notes and conducted an examination of Schuller. Dr. Miller diagnosed Schuller with back pain, fibromyalgia, chronic fatigue syndrome, depression, and deconditioning. He recommended that Schuller see a pain psychologist and a physical therapist.

On April 13, 2006, Schuller visited with Dr. Straniero and informed him of her switch in pain management specialist from Dr. Pai to Dr. Miller. Dr. Straniero examined Schuller and found some soft tissue tender points associated with her fibromyalgia. He recommended that Schuller receive updated lab tests. On July 12, 2006, Schuller went to Dr. Miller and reported that her poor health coverage restricted her access to both behavioral therapy and physical therapy. Dr. Miller advised her as to an exercise program and prescribed some medication.

On August 14, 2006, Dr. Ralph Inabnit, a state examining physician, reviewed Schuller's medical history to the extent of her surgery and treatment and conducted an examination. Dr. Inabnit noted that he was not provided with Schuller's medical records. Dr. Inabnit noted a limited range of motion in the lumbar spine and diagnosed Schuller with fibromyalgia, obesity,

4

chronic pain syndrome, insomnia, narcotics, chronic low back pain, poor concentration, and post status discetomy and fusion of L4 and L5.

On August 30, 2006, Schuller was examined by Alan Wax, a state agency psychologist. Dr. Wax interviewed Schuller and conducted a variety of mental and cognitive tests. Dr. Wax concluded that Schuller did not appear to be in acute distress because she sat with appropriate posture. He further concluded that Schuller had average memory, attention, communication ability, and focus; he gave her a GAF score of 58.

On October 12, 2006, Schuller went to an appointment with Dr. Miller and did not report any new complaints or an increase in pain. Schuller told Dr. Miller that she was "status quo." The following day, Schuller went to Dr. Straniero who noted no changes from her last visit in April. Dr. Straniero only recommended increasing the dosage of her medication.

On February 22, 2007, Schuller returned to Dr. Straniero and reported a new pain in her neck that traveled down her right arm. Dr. Straniero examined Schuller and noted tender points, but nothing different than other points associated with her fibromyalgia. He recommended that Schuller undergo a cervical spine x-ray. The very next day Dr. Straniero wrote a letter to Schuller's attorney stating that she would not be able to maintain any type of employment and would not likely improve her condition in the future. Dr. Straniero also completed a fibromyalgia impairment questionnaire noting that Schuller fit all of the requirements for a diagnosis of fibromyalgia and she was capable of moderate work stress but would need to take unscheduled breaks to rest once an hour.

On March 13, 2007, Dr. Miller again advised Schuller to begin physical therapy and recommended a second caudal epidural injection. In a letter dated April 20, 2007, Dr. Miller

explained that Schuller refused the injection, physical therapy, and cognitive behavior therapy despite his offering the therapies for free. Dr. Miller concluded that based upon Schuller's condition and actions that she would not be able to improve to maintain employment.

On July 20, 2007, Schuller went to Dr. Straniero complaining of neck pains and lower back pain traveling down her left leg. Dr. Straniero noted no change in the level of tenderness associated with her fibromyalgia. On October 31, 2007, Schuller complained to Dr. Miller of persistent back pain and pain in her left leg. She also reported sleep disturbances. Dr. Miller recommended and instructed Schuller on various exercises.

Schuller returned to Dr. Miller on March 26, 2008, reporting a bad fall which has caused pain to travel up from her tailbone to her lower back. Dr. Miller prescribed additional medication. In a letter dated May 19, 2008, Dr. Miller reaffirmed his prior letter finding that Schuller's condition was unchanged and her outlook was poor. He also stated that to the extent of his knowledge, Schuller had not undergone any physical therapy.

On October 6, 2008, Schuller began treatment at Michiana Behavioral Health. Treatment notes reflect that Schuller reported daily back pain, insomnia, loss of energy, poor concentration, an inability to exercise, and feelings of hopelessness and helplessness. Outpatient treatment was recommended and Schuller began treatment with psychiatrist Dr. Salvador Ceniceros on November 3, 2008. Dr. Ceniceros conducted a mental examination which revealed a poor memory and limited attention and concentration. Dr. Ceniceros diagnosed Schuller with major depressive disorder and generalized anxiety disorder. He further concluded that Schuller's GAF score was 52. Dr. Ceniceros prescribed Schuller various medications.

On January 7, 2009, Schuller returned to Dr. Ceniceros for a follow-up visit and was

prescribed more medication. On March 8, 2009, Dr. Ceniceros prescribed an increased dosage of two medications. On March 20, 2009, Schuller went to Dr. Straniero reporting problems with her depression and that she had begun treatment with Dr. Ceniceros. Dr. Straniero found 18 out of 18 points for fibromyalgia. He diagnosed Schuller with chronic pain syndrome and fluid retention.

On July 15, 2009, Schuller returned to Dr. Ceniceros. She reported that her mood was better but she still experienced panic attacks and isolation. Two days later Schuller visited with Dr. Straniero complaining of irritable bowel syndrome, continued fatigue, and widespread tenderness. Dr. Straniero switched Schuller's medications.

      2.      ALJ Hearing on November 17, 2008

          a.      Schuller's Testimony

On November 17, 2008, Schuller testified before an ALJ. She testified that her back was the main problems preventing her from working. She further testified that her chronic pain and anxiety also prevented her from working. She explained that she underwent back surgery, specifically to have an L4-L5 fusion and laminectomy and to have two cysts removed from her spine. Schuller testified that after the surgery she began to experience back pain in areas that previously had not given her problems. Schuller testified that she could lift a gallon of milk, but could not bend forward to place it back in the fridge. She further testified that she could not lift anything heavier than a gallon of milk.

Schuller also explained the various medications she takes and the side effects of those medications, specifically focusing on methadone and how it makes her groggy and hazy. Schuller described her typical day as taking care of her dogs, making her husband a sandwich,

7

placing dishes in the sink to soak, and watching TV. She further testified that she can dress and groom herself. Schuller also testified that she can grocery shop if someone takes her.

Schuller elaborated on her personal life explaining that she has lost many friends because they do not understand what she is going through. Schuller stated that she does not participate in any social organizations. She explained that she does not believe she has problems getting along with people, but that she would just rather not interact with others.

      b.   <u>Vocational Expert's Testimony</u>

The ALJ asked the Vocational Expert ("VE") if a hypothetical person with Schuller's RFC limitations, including being limited to sedentary work with the option to sit and stand at will, in addition to her age, education, and work experience would be able to perform past relevant work. The VE testified that those restrictions would not effect any past relevant work and there were about 3,500 jobs available in the region. The ALJ then proposed further limitations including (1) unskilled, entry level jobs and (2) simple, repetitive tasks with occasional contact with people and how that would effect past relevant work. The VE concluded that those additional limitations would excluded Schuller's past work, but that there were additional jobs in the Michiana area that would accommodate those restrictions. The VE testified that Schuller would be able to work as a final assembler, laminator, and table worker, totaling over 1,000 jobs.

  B.  <u>Standard of Review</u>

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. <u>See</u> 42 U.S.C. § 405(g); <u>Briscoe v. Barnhart</u>, 425 F.3d 345, 351 (7th Cir. 2005); <u>Haynes v. Barnhart</u>, 416 F.3d 621, 626 (7th Cir. 2005); <u>Golembiewski v.</u>

Barnhart, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). Further, an ALJ's legal conclusions are reviewed de novo. Haynes, 416 F.3d at 626.

    C.    Schuller's Complaint and Motion for Reversal or Remand

Schuller must establish that she is disabled to be entitled to benefits under the Social Security Act. See 42 U.S.C. § 423(a)(1)(D). The Act specifically defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a five part test to determine if the applicant is disabled. The ALJ must: (1) determine if the applicant is engaged in "substantial gainful activity;" (2) determine the medical severity of the alleged impairment or a combination of impairments; (3) determine if the impairment precludes substantial gainful activity according to the regulations; (4) determine if the RFC of the applicant precludes engaging in past relevant work; and (5) determine based upon education, work experience, and age if the applicant can engage in any other type of work. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v).

If the ALJ determines at any step that the applicant is disabled, that ends the inquiry. However, if the ALJ cannot make a determination or finds at a certain step that the applicant is not disabled, then the process continues onto the next step. 20 C.F.R. § 404.1520(a)(4).

An impairment or combination of impairments is considered severe if the applicant's physical or mental ability to perform basic work activities is significantly limited. 20 C.F.R. § 404.1521(a). If the applicant does not meet this requirement, then the applicant is not disabled. 20 C.F.R. § 404.1520(c). In order to be considered severe, the impairment must either cause the applicant's death, or has lasted or is expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. When assessing the severity of an impairment, the applicant's age, education, and work experience are not considered. Id. However, it is still possible for the applicant to have been disabled for a period of time in the past even if the applicant currently does not have a severe impairment. Id.

If the applicant's impairment or combination of impairments meets the requirements outlined in Subpart P, Appendix 1 and also meets the duration requirement, then the applicant is disabled without considering the applicant's age, work experience, or education. 20 C.F.R. § 404.1520(d). Once the ALJ finds that the applicant is not disabled after the first three steps, then the ALJ assesses the RFC. 20 C.F.R. § 404.1520(e). The RFC is the applicant's ability to do physical and mental work activities on a sustained basis despite limitations. Id. Once the RFC is determined, it is compared to the applicant's past relevant work to see if the applicant could still perform that type of work. 20 C.F.R. § 404.1520(f). If the applicant could still perform past relevant work, then the applicant is not disabled. Id. Past relevant work includes any substantial work performed within the last 15 years. 20 C.F.R. § 404.1560(b)(1). The applicant has the burden to prove the first four steps, but upon reaching step five, the burden shifts to the Commissioner. 20 C.F.R. § 404.1520(e).

Among other things, Schuller argues that the ALJ failed to properly consider her obesity

and how it complicated her other impairments. Schuller mentions that she is considered to be a level II obesity and according to SSR 02-1p, "bariatric surgery may be required" if there is another co-existing serious condition. Schuller further argues that the mere fact the ALJ did not mention SSR 02-1p was error.

This Court reviewed SSR 02-1p and finds that Schuller misstates a portion of the ruling. SSR 02-1p states, "...surgery may also be an option at level II (BMI 35-39.9) if there is a serious co-existing or related condition...[and] Surgery is generally a last resort..." SSR 02-1p, 2000 WL 628049, *1, *7 (2002). "May be an option" is drastically different than Schuller's contention that the surgery would be required at her level and furthermore Schuller fails to present evidence of a serious co-existing condition that would warrant this treatment. None of her treating physicians, although diagnosing Schuller with obesity, recommended surgery. Additionally, Schuller cites no authority and this Court cannot find any, to support the contention that it is error to not even mention a particular Social Security Ruling.

Regardless of Schuller's errors in her brief, this Court agrees with Schuller's overall argument that the ALJ failed to properly consider Schuller's obesity and its effect upon her other conditions. SSR 02-1p sets forth a sequential evaluation process for obesity that mirrors the general steps in determining whether a claimant is disabled. The four inquiries for evaluating the effects of obesity are to determine whether the claimant has a medically determinable impairment, whether the impairment is severe, whether the impairment meets or equals the requirements of the listed impairments, and whether that impairment prevents the claimant from engaging in past relevant work or other work that exists in the national economy. SSR 02-1p 2000 WL 628049, *1, *3 (SSA Sept. 12, 2002).. The ALJ performed the first three steps as

treating physicians and reviewing physicians diagnosed Schuller as obese and the ALJ considered Schuller's obesity to be severe. The ALJ also did not find that Schuller's obesity met the requirements of a listed impairment.

However, the ALJ failed to adequately explain his reasoning in relation to the final inquiry in determining how Schuller's obesity affected her other impairments. While the ALJ should not make any assumptions about the possible effects of obesity in combination with other impairments, the ALJ must evaluate the effects according to the information on the record. See SSR 02-1p at *6. The Ruling specifically guides ALJs to explain how their conclusion was reached regarding whether obesity caused any physical or mental limitations. See id at *7. Nowhere in the ALJ's opinion does he specifically address how Schuller's obesity affected her back pain and fibromyalgia. This Court finds that this is error and the ALJ needs to provide a greater explanation that also comports with the standard of building the logical bridge from the ALJ's reasoning to his conclusion.

### III. CONCLUSION

For the above reasons, this Court finds the ALJ's determinations about Schuller's RFC and how her obesity affected her other limitations was not supported by substantial evidence. Therefore, Schuller's motion for reverse or remand is **GRANTED** [Doc. No. 1]. Accordingly, this Court **REVERSES AND REMANDS** the ALJ's decision pursuant to sentence four of 42 U.S.C. § 405(g) and instructs the ALJ to revise his analysis in accordance with this opinion.

**SO ORDERED.**

Dated: April 14, 2011

s/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge